UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

In re:

LAURIE ARMELAGOS JOHNSON,

Debtor

Case No:      14-20710 MER

Chapter      13

BANK OF AMERICA, N.A. and its SUCCESSORS,
ASSIGNS, SERVICERS, TRUSTEES AND
INVESTORS,

Creditor

vs.

LAURIE ARMELAGOS JOHNSON and DOUGLAS
B. KIEL, Trustee

Respondents

### Motion For Relief From Co-Debtor Stay

BANK OF AMERICA, N.A. ("Movant"), by and through its attorneys, Janeway Law Firm, P.C., hereby moves this Court, pursuant to 11 U.S.C. § 1301 (c), for relief from the automatic stay with respect to certain real property of the Debtor having a purported common address of  12281 EAGLE POINTE CIRCLE, FORT MYERS, FL 33913 ("Property").   In further support of this Motion, Movant respectfully states:

1.      A petition under Chapter 13 of the United States Bankruptcy Code was filed with respect to the Debtors on August 4, 2014.

2.      A Chapter 13 Plan was confirmed on December 4, 2014. The Debtor surrendered the property in the plan, but there is a Non- Bankruptcy Co-Debtor on the Note.

3.      Movant seeks to terminate the automatic stay as to Movant.

4.      As set forth in the affidavit attached hereto as Exhibit 1, Debtors are not active in military service.

5.      LAURIE ARMELAGOS SCHLEH and Non-Bankruptcy Co-Debtor PETER D SCHLEH have executed and delivered or are otherwise obligated with respect to that certain promissory note in the original principal amount of $239,337.00 ("Note").  A copy of the Note is attached hereto as Exhibit 2.  Movant is an entity entitled to enforce the Note.

6.      Pursuant to that certain Mortgage signed by LAURIE ARMELAGOS SCHLEH and Non-Bankruptcy Co-Debtor PETER D SCHLEH and recorded in the County where the property is located on December 19, 2007 at Reception Number 2007000370625 ("Mortgage"), all obligations (collectively, "Obligations") of the Debtors under and with

respect to the Note and the Mortgage are secured by the Property. A copy of the Mortgage is attached hereto as Exhibit 3.

7. BANK OF AMERICA, N.A. services the loan on the Property referenced in this Motion. In the event the automatic stay in this case is modified, this case dismisses, and/or the Debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Movant. Movant, directly or through an agent, has possession of the Note. The Note is either made payable to Movant or has been duly endorsed.

8. All rights and remedies under the Mortgage have been assigned to Movant pursuant to that certain Assignment of Mortgage, a copy of which is attached hereto as Exhibit 4.

9. The legal description of the Property described in the Mortgage and the subject of this Motion is:
SEE ATTACHED LEGAL DESCRIPTION

10. As of April 20, 2015, the outstanding Obligations are:

| | |
|---|---|
| Unpaid Principal Balance | $235,241.88 |
| Unpaid, Accrued Interest | $90,911.11 |
| Uncollected Late Charges | $210.42 |
| Mortgage Insurance Premiums | $88.25 |
| Taxes and Insurance Payments on behalf of Debtor(s) | $43,287.09 |
| Other Costs | $8,242.40 |
| Less: Partial Payments | -$0.00 |
| Minimum Outstanding Obligations | $377,981.15 |

11. The foregoing Other Costs consist of the following:

| Fee Description | Amount | Date |
|---|---|---|
| INSPECTION- VACANT | 15.00 | May 26, 2011 |
| INSPECTION- VACANT | 15.00 | August 2, 2011 |
| INSPECTION- VACANT | 15.00 | September 19, 2011 |
| INSPECTION- VACANT | 15.00 | November 1, 2011 |
| INSPECTION- VACANT | 15.00 | November 30, 2011 |
| INSPECTION- VACANT | 15.00 | December 28, 2011 |
| INSPECTION- VACANT | 20.50 | June 16, 2012 |
| INSPECTION- VACANT | 20.50 | September 1, 2012 |
| INSPECTION- VACANT | 15.00 | September 28, 2012 |
| INSPECTION- VACANT | 15.00 | October 31, 2012 |
| INSPECTION- VACANT | 15.00 | December 21, 2012 |

| | | |
|---|---|---|
| INSPECTION- VACANT | 9.00 | January 21, 2013 |
| INSPECTION- VACANT | 15.00 | February 23, 2013 |
| INSPECTION- VACANT | 15.00 | March 30, 2013 |
| INSPECTION- VACANT | 15.00 | April 30, 2013 |
| INSPECTION- VACANT | 15.00 | June 5, 2013 |
| INSPECTION- VACANT | 15.00 | July 16, 2013 |
| INSPECTION- VACANT | 15.00 | August 16, 2013 |
| INSPECTION- VACANT | 15.00 | September 23, 2013 |
| INSPECTION- VACANT | 15.00 | October 28, 2013 |
| INSPECTION- VACANT | 15.00 | November 26, 2013 |
| INSPECTION- VACANT | 15.00 | January 7, 2014 |
| INSPECTION- VACANT | 15.00 | February 4, 2014 |
| INSPECTION- VACANT | 15.00 | June 13, 2014 |
| INSPECTION- VACANT | 15.00 | July 15, 2014 |
| ATTORNEY/ TRUSTEE FEE | 375.00 | October 21, 2013 |
| ATTORNEY/ TRUSTEE FEE | 250.00 | January 14, 2014 |
| ATTORNEY/ TRUSTEE FEE | 500.00 | August 14, 2014 |
| INSPECTION- OCCUPIED | 15.00 | October 1, 2009 |
| ADVERTIZE/ PUBLISH | 155.00 | August 26, 2014 |
| FILING FEES | 960.00 | January 14, 2014 |
| UTILITIES | 75.00 | April 30, 2014 |
| UTILITIES | 25.00 | April 30, 2014 |
| UTILITIES | 25.00 | April 30, 2014 |
| BK MOTION FOR RELIEF | 750.00 | July 7, 2014 |
| TITLE SEARCH FEE | 260.00 | February 10, 2015 |
| BK ATTY PLAN REVIEW | 350.00 | February 27, 2015 |
| PROCESS SERVER | 1,190.80 | March 28, 2014 |
| LOCK CHANGE | 95.00 | July 10, 2013 |
| LOCK CHANGE | 35.00 | July 31, 2013 |
| INITIAL LAWN CUT | 100.00 | July 4, 2011 |
| INITIAL LAWN CUT | 85.00 | July 10, 2013 |
| INITIAL YARD MAINT | 85.00 | July 30, 2014 |
| LAWN RE-CUT | 80.00 | April 4, 2012 |
| LAWN RE-CUT | 100.00 | June 9, 2012 |
| LAWN RE-CUT | 100.00 | July 6, 2012 |
| LAWN RE-CUT | 100.00 | October 8, 2012 |
| LAWN RE-CUT | 100.00 | November 1, 2012 |
| LAWN RE-CUT | 100.00 | November 23, 2012 |
| LAWN RE-CUT | 100.00 | December 10, 2012 |

| | | |
|---|---|---|
| LAWN RE-CUT | 80.00 | July 16, 2013 |
| LAWN RE-CUT | 80.00 | July 30, 2013 |
| LAWN RE-CUT | 80.00 | August 14, 2013 |
| LAWN RE-CUT | 80.00 | September 16, 2013 |
| LAWN RE-CUT | 80.00 | October 16, 2013 |
| LAWN RE-CUT | 80.00 | October 28, 2013 |
| LAWN RE-CUT | 80.00 | November 11, 2013 |
| YARD MAINT/ RE-CUT | 80.00 | December 9, 2013 |
| LAWN RE-CUT | 80.00 | December 23, 2013 |
| LAWN RE-CUT | 80.00 | January 8, 2014 |
| LAWN RE-CUT | 80.00 | January 22, 2014 |
| LAWN RE-CUT | 80.00 | February 5, 2014 |
| YARD MAINT/ RE-CUT | 80.00 | February 20, 2014 |
| YARD MAINT/ RE-CUT | 80.00 | March 6, 2014 |
| YARD MAINT/ RE-CUT | 80.00 | January 21, 2015 |
| YARD MAINT/ RE-CUT | 80.00 | February 20, 2015 |
| YARD MAINT/ RE-CUT | 80.00 | March 9, 2015 |
| YARD MAINT/ RE-CUT | 80.00 | March 24, 2015 |
| PHOTOS | 15.75 | October 13, 2012 |
| PHOTOS | 1.05 | November 5, 2012 |
| PHOTOS | 15.75 | December 10, 2012 |
| PHOTOS | 84.00 | July 10, 2013 |
| PHOTOS | 115.50 | July 16, 2013 |
| PHOTOS | 12.60 | July 16, 2013 |
| PHOTOS | 12.60 | July 30, 2013 |
| PHOTOS | 10.50 | July 31, 2013 |
| PHOTOS | 12.60 | August 14, 2013 |
| PHOTOS | 5.25 | August 31, 2013 |
| PHOTOS | 12.60 | September 16, 2013 |
| PHOTOS | 12.60 | October 16, 2013 |
| PHOTOS | 12.60 | October 28, 2013 |
| PHOTOS | 12.60 | November 11, 2013 |
| PHOTOS | 12.60 | December 23, 2013 |
| PHOTOS | 12.60 | January 8, 2014 |
| PHOTOS | 12.60 | January 22, 2014 |
| PHOTOS | 12.60 | February 5, 2014 |
| PHOTOS | 12.60 | February 20, 2014 |
| PHOTOS | 12.60 | July 30, 2014 |

12.     In addition to the other amounts due to Movant reflected in this Motion, as of the date hereof, in connection with seeking the relief requested herein, Movant has also incurred $850.00 in legal fees and $176.00 in costs.  Movant reserves all rights to seek an award or allowance of such fees and expenses in accordance with applicable loan documents and related agreements, the Bankruptcy Code and otherwise applicable law.

13.     The following chart sets forth the number and amount of postpetition payments due pursuant to the terms of the Note that have been missed by the Debtor(s):

| Number of Missed Payments | From | To | Monthly Payment Amount | Total Missed Payments |
|---|---|---|---|---|
| 8 | September 1, 2014 | April 1, 2015 | $2,159.92 | $17,279.36 |
| Less partial payments: | | | | ($0.00) |
| Total: | | | | $17,279.36 |

14.     An additional payment of $2,159.92 will come due on May 1, 2015.

15.     An additional payment of $2,159.92 will come due on June 1, 2015.

16.     Attached hereto as Exhibit 5 is a postpetition payment history with respect to the Obligations.

17.     The current estimated market value of the property is approximately $107,188.00 pursuant to the Debtor's Schedules.

18.     Upon information and reasonable belief, the encumbrances on the Property listed in the Schedules or otherwise known, including but not limited to the encumbrances granted to Movant, are:
        a. Movant, in the amount of approximately $377,981.15.
        b. GATEWAY SERVICES in the amount of $585.95 pursuant to DEBTOR'S SCHEDULES.

19.     Upon information and reasonable belief, the loan was active in foreclosure prior to the bankruptcy petition being filed. A copy of the foreclosure complaint was dated November 20, 2013.

20.     To the best knowledge of the undersigned attorney, the Debtor has not recently requested a loan modification.

21.     The current unpaid principal balance is $235,241.88.

22.     The current payment amount is $2,159.92 and includes principal, interest, taxes and insurance.

23.    Non- bankruptcy co-debtor, PETER D SCHLEH is co-signor of the Note. Co-debtor has failed to make post-petition mortgage payments. Co- debtor has received the benefit of the loan, and pursuant to Section 1301, creditor is entitled to relief from Co-Debtor to the extent the Debtor does not pay the claim through the plan.

24.    If the notice filed herein regarding this motion specifies a hearing date more than 20 days from filing the motion, Movant hereby waives its rights to have this matter heard sooner.

WHEREFORE, Movant respectfully requests this Court to issue an Order terminating the automatic stay and granting the following:

1.    Relief from the stay allowing Movant and any successors or assigns to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property and any and all other collateral pledged under the Mortgage.

2.    That the Order be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code.

3.    That the 14-day stay described in Bankruptcy Rule 4001 (a)(3) be waived.

4.    For such other relief as the Court deems just and proper. Movant further requests that upon entry of an order granting relief from stay, it be exempted from further compliance with Fed. Rule Bankr. P. 3002.1 in the instant bankruptcy case.

Dated:  May 13, 2015

Attorneys for BANK OF AMERICA, N.A.
JANEWAY LAW FIRM, P.C.

Lynn M. Janeway #15592
David R. Doughty #40042
Eve M. Grina #43658
Elizabeth S. Marcus #16092
Alison L. Berry #34531
Courtney E. Wright #45482
Nicholas H. Santarelli #46592
Kelly Murdock #46915
9800 S. Meridian Blvd., Suite 400
Englewood, CO 80112
Phone: (303) 706-9990
Fax: (303) 706-9994
bankruptcy@janewaylaw.com
JLF 14-003070

## LEGAL DESCRIPTION

File Number: ████████

All that certain land situate in Lee County, State of Florida, viz:

Lot 12, of Cypress Pointe Phase II, according to the plat thereof, recorded in Plat Book 51, at Page 61, of the Public Records of Lee County, Florida.

Being the same property conveyed to Peter D. Schleh and Laurie Armelagos Schleh, husband and wife, by Quit Claim Deed dated January 5, 2005, of record in Official Record Book 4556, Page 2855, in the Public Records of Lee County, Florida. Also, being the same property PREVIOUSLY conveyed to Peter D. Schleh, by Warranty Deed dated June 15, 1998, of record in Official Record Book 2977, Page 3814, in the Office aforesaid.

Being the same property commonly known as: 12281 Eagle Pointe Circle, Fort Myers, Florida 33913
Tax ID No.: 07-45-26-12-00000.0120

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | Case No: | 14-20710 MER |
| LAURIE ARMELAGOS JOHNSON, | | |
| Debtor | | |
| | Chapter | 13 |
| BANK OF AMERICA, N.A. and its SUCCESSORS, | | |
| ASSIGNS, SERVICERS, TRUSTEES AND INVESTORS, | | |
| Creditor | | |
| vs. | | |
| LAURIE ARMELAGOS JOHNSON and DOUGLAS B. | | |
| KIEL, Trustee | | |
| Respondents | | |

## NOTICE OF MOTION FOR RELIEF FROM CO-DEBTOR STAY
## AND OPPORTUNITY FOR HEARING PURSUANT TO 11 U.S.C. § 1301(c)

### OBJECTION DEADLINE: May 20, 2015

YOU ARE HEREBY NOTIFIED that a Motion for Relief from Co-Debtor Stay has been filed, a copy of which is attached hereto.

A hearing on the Motion has been set for **May 27, 2015 at 9:30 A.M. at the U.S. Custom House, 721 19th Street, in Courtroom C, Denver, Colorado 80202-2508.** The hearing will be conducted in accordance with the provisions of Local Bankruptcy Rule 4001-1.

IF YOU DESIRE TO OPPOSE THIS MOTION, you must file with this court a WRITTEN OBJECTION to the motion on or before the objection deadline stated above and serve a copy upon Movant's attorney, whose address is listed below.

If you file an objection, you are REQUIRED to comply with L.B.R. 4001-1 regarding hearing procedures, including (1) the timely submission and exchange of witness lists and exhibits and (2) attendance at the above-scheduled hearing in person or through counsel, if represented.

**IF YOU FAIL TO FILE AN OBJECTION**, the scheduled hearing will be **vacated**, and an order granting the relief requested may be granted without further notice to you.

Dated: May 13, 2015
Janeway Law Firm, P.C.
Attorneys for BANK OF AMERICA, N.A.

Lynn M. Janeway #15592
David R. Doughty #40042
Eve M. Grina #43658
Elizabeth S. Marcus #16092
Alison L. Berry #34531
Courtney E. Wright #45482
Nicholas H. Santarelli #46592
Kelly Murdock #46915
9800 S. Meridian Blvd., Suite 400
Englewood, CO 80112
Phone: (303) 706-9990 Fax: (303) 706-9994
bankruptcy@janewaylaw.com JLF No.: 14-003070

In re:
LAURIE ARMELAGOS JOHNSON, XXX-XX-6963

Case Number:       14-20710 MER
Chapter:           13


AFFIDAVIT PURSUANT TO THE SERVICEMEMBER CIVIL RELIEF ACT OF 2003

I, Amanda Bishop, being of lawful age, first duly sworn, hereby state as follows:

I am over the age of 18 and am an employee of Janeway Law Firm, P.C.

On May 13, 2015, I, Amanda Bishop, performed a search on the Department of Defense
Manpower Data Center.  Upon searching the information data banks of the Department of
Defense Manpower Data Center (DMDC), the DMDC does not possess any information
indicating that the Debtor, LAURIE ARMELAGOS JOHNSON, and Non- Bankruptcy Co-
Debtor PETER D SCHLEH, are currently on active duty as to all branches of the Military.

Dated: May 13, 2015

By:    _____
       Amanda Bishop

Subscribed and affirmed before me in Douglas County, State of Colorado on 5/13/15 .

Seal and Commission expiration date:
5/16/18

_____
(Notary's official signature)


JLF #: 14-003070

LAUREN MORAIN
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20084042984
MY COMMISSION EXPIRES 5/16/2018


**EXHIBIT 1**

Department of Defense Manpower Data Center



**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

Last Name: JOHNSON

First Name: LAURIE

Middle Name: ARMELAGOS

Active Duty Status As Of: May-13-2015

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Mary M. Snavely-Dixon*

Mary M. Snavely-Dixon, Director
Department of Defense - Manpower Data Center
4800 Mark Center Drive, Suite 04E25
Arlington, VA 22350

Department of Defense Manpower Data Center

Results as of  May-13-2015 08:36:50 AM

SCRA 3.0



**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

Last Name: SCHLEH

First Name: LAURIE

Middle Name: ARMELAGOS

Active Duty Status As Of: May-13-2015

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Mary M. Snavely-Dixon*

Mary M. Snavely-Dixon, Director
Department of Defense - Manpower Data Center
4800 Mark Center Drive, Suite 04E25
Arlington, VA 22350

Department of Defense Manpower Data Center

Results as of  May-13-2015 08 36 51 AM

SCRA 3 0



**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

Last Name: ARMELAGOS

First Name: LAURIE

Middle Name: JUNE

Active Duty Status As Of: May-13-2015

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individual's active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Mary M. Snavely-Dixon*

Mary M. Snavely-Dixon, Director
Department of Defense - Manpower Data Center
4800 Mark Center Drive, Suite 04E25
Arlington, VA 22350

Department of Defense Manpower Data Center

Results as of : May-13-2015 08 36 50 AM

SCRA 3.0



**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

Last Name: JOHNSON

First Name: LAURIE

Middle Name: A

Active Duty Status As Of: May-13-2015

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Mary M. Snavely-Dixon*

Mary M. Snavely-Dixon, Director
Department of Defense - Manpower Data Center
4800 Mark Center Drive, Suite 04E25
Arlington, VA 22350

Department of Defense Manpower Data Center

Results as of : May-13-2015 08:35:52 AM

SCRA 3.0



**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

Last Name: SCHLEH

First Name: PETER

Middle Name:

Active Duty Status As Of: May-13-2015

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Mary M. Snavely-Dixon*

Mary M. Snavely-Dixon, Director
Department of Defense - Manpower Data Center
4800 Mark Center Drive, Suite 04E25
Arlington, VA 22350

Department of Defense Manpower Data Center

Results as of : May-13-2015 08 35 47 AM

SCRA 3.0



### Status Report
### Pursuant to Servicemembers Civil Relief Act

Last Name: SCHLEH

First Name: PETER

Middle Name: D

Active Duty Status As Of: May-13-2015

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Mary M. Snavely-Dixon*

Mary M. Snavely-Dixon, Director
Department of Defense - Manpower Data Center
4800 Mark Center Drive, Suite 04E25
Arlington, VA 22350

Department of Defense Manpower Data Center

Results as of : May-13-2015 08:35:51 AM

SCRA 3.0



**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

Last Name: JOHNSON
First Name: LAURIE
Middle Name: JUNE
Active Duty Status As Of: May-13-2015

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Mary M. Snavely-Dixon*

Mary M. Snavely-Dixon, Director
Department of Defense - Manpower Data Center
4800 Mark Center Drive, Suite 04E25
Arlington, VA 22350

Department of Defense Manpower Data Center

Results as of : May-13-2015 08 35 50 AM

SCRA 3 0



### Status Report
### Pursuant to Servicemembers Civil Relief Act

Last Name: JOHNSON

First Name: LAURIE

Middle Name:

Active Duty Status As Of: May-13-2015

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Mary M. Snavely-Dixon*

Mary M. Snavely-Dixon, Director

Department of Defense - Manpower Data Center

4800 Mark Center Drive, Suite 04E25

Arlington, VA 22350

Department of Defense Manpower Data Center

Results as of : May-13-2015 08 35 47 AM

SCRA 3 0



**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

Last Name: SCHLEH
First Name: LAURIE
Middle Name: JUNE
Active Duty Status As Of: May-13-2015

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individual's active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Mary M. Snavely-Dixon*

Mary M. Snavely-Dixon, Director
Department of Defense - Manpower Data Center
4800 Mark Center Drive, Suite 04E25
Arlington, VA 22350

## Certificate of Service

The undersigned hereby certifies that on May 13, 2015 a copy of the attached Notice of Hearing or Preliminary Hearing with a copy of the Motion for Relief from Co-Debtor Stay was deposited into U.S. mail in an envelope with prepaid, first class postage and addressed as follows:

LAURIE ARMELAGOS JOHNSON
350 S. JACKSON STREET APT. 225
DENVER, CO 80209

PETER D SCHLEH
3426 SUNRISE VILLAS CT S
TAMPA, FL 33614

MICHAEL SUCHOPAREK
517 E. 16TH AVE.
DENVER, CO 80203-1917

US TRUSTEE
PAPER COPY NOT MAILED PURSUANT TO L.B.R. 4001-1

DOUGLAS B. KIEL
4725 S. MONACO ST.
STE 120
DENVER, CO 80237

GATEWAY SERVICES
13240 GRIFFIN DR
FORT MYERS, FL 33913

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re: | Chapter 13 |
| **LAURIE ARMELAGOS JOHNSON,** | Case No. 14-20710 MER |
| Debtor(s). | |

## DECLARATION IN SUPPORT OF
## MOTION FOR RELIEF FROM CO-DEBTOR AUTOMATIC STAY

I, __Ignacio Alvarado__, declare under penalty of perjury as follows:

1.      I am a/an Assistant Vice President of Bank of America, N.A. ("BANA") and am authorized to sign this declaration on behalf of BANA. This declaration is provided in support of the Motion for Relief from Co-Debtor Stay (the "Motion") filed contemporaneously herewith.

2.      As part of my job responsibilities for BANA, I have personal knowledge of and am familiar with the types of records maintained by BANA in connection with the loan that is the subject of the Motion (the "Loan") and the procedures for creating those types of records. I have access to and have reviewed the books, records and files of BANA that pertain to the Loan and extensions of credit given to Debtor(s) concerning the property securing such Loan.

3.      The information in this declaration is taken from BANA's business records regarding the Loan. The records are: (a) made at or near the time of the occurrence of the matters recorded by persons with personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge; (b) kept in the course of BANA's regularly conducted business activities; and (c) it is the regular practice of BANA to make such records.

4.      The Debtor(s) has/have executed and/or delivered and/or is/are otherwise obligated with respect to that certain promissory note referenced in the Motion (the "Note"). Pursuant to that certain Mortgage referenced in the Motion (the "Mortgage"), all obligations of the Debtor(s) under and with respect to the Note and the Mortgage are secured by the property referenced in the Motion.

5. As of April 20, 2015, there are one or more defaults in paying post-petition amounts due with respect to the Note.

6. As of April 20, 2015, the unpaid principal balance of the Note is $235,241.88.

7. The following chart sets forth those postpetition payments, due pursuant to the terms of the Note, that have been missed by the Debtor(s) as of April 20, 2015:

| Number of Missed Payments | From | To | Missed Principal and Interest | Missed Escrow (if applicable) | Monthly Payment Amount | Total Amounts Missed |
|---|---|---|---|---|---|---|
| 8 | 9/1/14 | 4/1/15 | $1,532.51 | $627.41 | $2,159.92 | $17,279.36 |
| Less postpetition partial payments (suspense balance): ($0.00) | | | | | | |

Total: $17,279.36

8. As of April 20, 2015, the total postpetition arrearage/delinquency is $18,209.36, consisting of (i) the foregoing total of missed postpetition payments in the amount of $17,279.36 plus (ii) the following postpetition fees.[1] This is the amount necessary to cure any post-petition default on or about the date hereof.

| Description | Amount[2] |
|---|---|
| TITLE SEARCH FEE | $260.00 |
| BK ATTY PLAN REVIEW | $350.00 |
| YARD MAINT/ RE-CUT | $80.00 |
| YARD MAINT/ RE-CUT | $80.00 |
| YARD MAINT/ RE-CUT | $80.00 |
| YARD MAINT/ RE-CUT | $80.00 |

[1] The total of missed postpetition payments for this impounded loan include any missed escrow payments. Such missed escrow payments include amounts assessed for taxes and insurance and any previously assessed escrow shortage amount (if applicable). To avoid duplication, postpetition advances (if any) made for insurance, real estate taxes, or similar charges are not listed separately to the extent such advances would have been paid from the missed escrow payments. As part of the next annual RESPA analysis, the Bank will determined whether the escrow payments assessed to the debtor (including the missed escrow payments) result in a projected escrow shortage or overage. All rights are hereby reserved to assert or request any escrow amounts in accordance with RESPA and the total postpetition arrearage/delinquency is qualified accordingly. In addition, the amounts set forth herein do not include any legal fees or expenses of counsel incurred by Movant in connection with seeking the relief requested in the Motion.
[2] Any post-petition fees and/or costs included herein are for the purpose of disclosure. Such fees and/or costs may be subject to the provisions of F.R.B.P. 3002.1 (e), and nothing in this Motion or the associated Supplemental Declaration is intended to deprive the Debtor(s) of any such rights.

9.      Upon information and belief, as of April 20, 2015 the unpaid amount of the prepetition arrearage and any other amounts to be cured under the confirmed plan is $0.00.[3]

10.     The next payment under the terms of the Note will come due on May 1, 2015 and is in the amount of $2,159.92.

11.     Attached to the Motion as Exhibit 5 is a postpetition payment history.

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.   Executed this   13   day of   May   ,  2015  .

*Ignacio Alvarado*

Name: Ignacio Alvarado
Title: Assistant Vice President

---

[3] The amount set forth herein is based on the amount reflected on the trustee's ledger.  Additional information regarding this amount is available upon request.

Florida

**NOTE**

Loan No.:
FHA Case No.

MIN:
MERS TELEPHONE:

**THE STATE DOCUMENTARY TAX DUE ON THIS NOTE HAS BEEN PAID ON THE MORTGAGE SECURING THIS INDEBTEDNESS.**

December 5, 2007
[Date]

12281 EAGLE POINTE CIRCLE, FORT MYERS, FLORIDA 33913
[Property Address]

1.   **PARTIES**
    "Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means SurePoint Lending aka First Residential Mortgage Network, Inc.
and its successors and assigns.

2.   **BORROWER'S PROMISE TO PAY; INTEREST**
    In return for a loan received from Lender, Borrower promises to pay the principal sum of Two Hundred Thirty Nine Thousand Three Hundred Thirty Seven And 00/100
Dollars (U.S. $ 239,337.00), plus interest, to the order of Lender.  Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of Six and Five-Eighths percent (6.625%) per year until the full amount of principal has been paid.

3.   **PROMISE TO PAY SECURED**
    Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument."  The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

4.   **MANNER OF PAYMENT**
    (A)  Time
        Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on February 1, 2008.  Any principal and interest remaining on the first day of January 1, 2038, will be due on that date, which is called the "Maturity Date."
    (B)  Place
        Payment shall be made at 9721 Ormsby Station Road, Suite 107, Louisville, KENTUCKY  40223 or at such place as Lender may designate in writing by notice to Borrower.
    (C)  Amount
        Each monthly payment of principal and interest will be in the amount of U.S. $ 1,532.51.  This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.
    (D)  Allonge to this Note for payment adjustments
        If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note.  [Check applicable box]

    ☐ Graduated Payment Allonge    ☐ Growing Equity Allonge    ☐ Other [specify]

5.   **BORROWER'S RIGHT TO PREPAY**
    Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month.  Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary.  If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

6.   **BORROWER'S FAILURE TO PAY**
    (A)  Late Charge for Overdue Payments
        If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen (15) calendar days after the payment is due, Lender may collect a late charge in the amount of five percent (5.00%) of the overdue amount of each payment.

FHA Florida Fixed Rate Note - 10/95                                                        Amended 10/98

Page 1 of 2
flfixnt

Initials:

Exhibit 2

**(B)   Default**
   If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C)   Payment of Costs and Expenses**
   If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7.     WAIVERS**
   Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8.     GIVING OF NOTICES**
   Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.
   Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9.     OBLIGATIONS OF PERSONS UNDER THIS NOTE**
   If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

   BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)            _____ (Seal)
Peter D Schleh          -Borrower            Laurie Armelagos Schleh    -Borrower

_____ (Seal)            _____ (Seal)
                        -Borrower                                       -Borrower


Pay To The Order Of   **COUNTRYWIDE BANK, FSB**

Without Recourse
By:_____
SurePoint Lending
aka First Residential Mortgage Network, Inc.
Bryce Malone
Vice President

COUNTRYWIDE HOME LOANS SERVICING LP

PAY TO THE ORDER OF
WITHOUT RECOURSE
COUNTRYWIDE BANK, FSB

BY   _____
     LAURIE MEDER
     SENIOR VICE PRESIDENT


FHA Florida Fixed Rate Note - 10/95                    Page 2 of 2

PAY TO THE ORDER OF

WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS SERVICING LP

Michele Sjolander

BY:

MICHELE SJOLANDER
EXECUTIVE VICE PRESIDENT

INSTR # 2007000370625, Pages 13
Doc Type MTG, Recorded 12/19/2007 at 09:15 AM,
Charlie Green, Lee County Clerk of Circuit Court
Mtg Doc: $837.90 Int. Tax $478.67  Rec. Fee $112.00
Deputy Clerk PRAMBARRAN
#1

Return To:
**Real Estate Title Services, LLC**
**9721 Ormsby Station Road, Suite 105**
**Louisville, KENTUCKY  40223**

This document was prepared by:
**Bryce Malone**
**First Residential Mortgage Network, Inc.**
**9500 ORMSBY STATION ROAD**
**LOUISVILLE, KENTUCKY  40223**

**RETS File No:** ▮▮▮▮▮

---

[Space Above This Line For Recording Data]

**State of Florida**

# MORTGAGE

FHA Case No.
▮▮▮▮▮▮▮

MIN ▮▮▮▮▮▮
**MERS TELEPHONE:** ▮▮▮▮▮

THIS MORTGAGE ("Security Instrument") is given on **December 5, 2007**. The Mortgagor is **Peter D Schleh and Laurie Armelagos Schleh, husband and wife**, whose address is **12281 EAGLE POINTE CIRCLE, FORT MYERS, FLORIDA  33913** ("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as mortgagee. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. **SurePoint Lending abn First Residential Mortgage Network, Inc. ("Lender")** is organized and existing under the laws of the State of KENTUCKY, and has an address of **9721 Ormsby Station Road, Suite 107, Louisville, KENTUCKY  40223**. Borrower owes Lender the principal sum of **Two Hundred Thirty Nine Thousand Three Hundred Thirty Seven And 00/100 Dollars (U.S. $239,337.00)**. This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **January 1, 2038**. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in Okeechobee County, Florida:

FHA Florida Mortgage with MERS – 4/96
4N(FL) (0305).01
flfmertd

Page 1 of 9

Amended 2/01
Initials: _JmS_ _PDS_

Exhibit 3

SEE EXHIBIT 'A' ATTACHED HERETO AND BY THIS REFERENCE MADE A PART HEREOF.

which has the address of 12281 EAGLE POINTE CIRCLE [Street] FORT MYERS [City], Florida 33913 [Zip Code] ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

FHA Florida Mortgage with MERS – 4/96
4N(FL) (0305).01                                    Page 2 of 9                              Amended 2/01

Initials:

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

<u>First</u>, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

<u>Second</u>, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

<u>Third</u>, to interest due under the Note;

Underline{Fourth}, to amortization of the principal of the Note; and

Underline{Fifth}, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

FHA Florida Mortgage with MERS – 4/96
4N(FL) (0305).01                              Page 3 of 9                              Amended 2/01

Initials:

**5.   Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.**  Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control.  Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted.  Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default.  Lender may take reasonable action to protect and preserve such vacant or abandoned Property.  Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence.  If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6.   Condemnation.**  The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument.  Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal.  Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7.   Charges to Borrower and Protection of Lender's Rights in the Property.**  Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2.  Borrower shall pay these obligations on time directly to the entity which is owed the payment.  If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument.  These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument.  If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a

notice identifying the lien.  Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

    8.  **Fees.**  Lender may collect fees and charges authorized by the Secretary.

    9.  **Grounds for Acceleration of Debt.**

      (a) **Default.**  Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

        (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

        (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

      (b) **Sale Without Credit Approval.**  Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

        (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

        (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

      (c) **No Waiver.**  If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

      (d) **Regulations of HUD Secretary.**  In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid.  This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

      (e) **Mortgage Not Insured.**  Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.  A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility.  Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

    10.  **Reinstatement.**  Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument.  This right applies even after foreclosure proceedings are instituted.  To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding.  Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full.  However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure

proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde,

FHA Florida Mortgage with MERS – 4/96
4N(FL) (0305).01                                    Page 6 of 9                            Amended 2/01

Initials: _____

and radioactive materials.  As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17.  **Assignment of Rents.**  Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property.  Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents.  However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower.  This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower.  However, Lender or a judicially appointed receiver may do so at any time there is a breach.  Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18.  **Foreclosure Procedure.  If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act.  Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19.  **Release.**  Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower.  Borrower shall pay any recordation costs.

20.  **Attorneys' Fees.**  As used in this Security Instrument and the Note, "attorneys' fees" shall include any attorneys' fees awarded by an appellate court.

Amended 2/01

Initials PDS

   **21.  Riders to this Security Instrument.**  If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.  [Check applicable box(es)].

[  ]  Condominium Rider                    [  ]  Growing Equity Rider          [  ]  Other(s) [specify]
[X]  Planned Unit Development Rider     [  ]  Graduated Payment Rider

   BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_Victoria Boyd_ _____      _Peter D. Schleh_ _____  (Seal)
Victoria Boyd                                          Peter D Schleh                          -Borrower

_Gary Boyd_ _____      _Laurie Armelagos Schleh_ _____  (Seal)
Gary J Boyd                                          Laurie Armelagos Schleh            -Borrower

_____      _____  (Seal)
                                                                                                       -Borrower

_____      _____  (Seal)
                                                                                                       -Borrower

FHA Florida Mortgage with MERS — 4/96                     Page 8 of 9                          Amended 2/01
4N(FL) (0305).01

STATE OF FLORIDA,   County ss: _Lee_

 The foregoing instrument was acknowledged before me this _5th day of December 2007_ by
Peter D Schleh and Laurie Armelagos Schleh,
who is personally known to me or who has produced _Florida Drivers Licenses_
as identification.

_Victoria Boyd_
Notary Public   Victoria Boyd

```
VICTORIA BOYD
MY COMMISSION # DD 494775
EXPIRES: September 4, 2009
Bonded Thru Notary Public Underwriters
```

FHA Florida Mortgage with MERS – 4/96          Page 9 of 9
4N(FL) (0305).01

Amended 2/01
Initials:

# PLANNED UNIT DEVELOPMENT RIDER

FHA Case No.

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **5th** day of **December, 2007,** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to **SurePoint Lending abn First Residential Mortgage Network, Inc.** ("Lender") of the same date and covering the Property described in the Security Instrument and located at:

**12281 EAGLE POINTE CIRCLE, FORT MYERS, FLORIDA  33913**
[Property Address]

The Property Address is a part of a planned unit development ("PUD") known as

[Name of Planned Unit Development]

**PUD COVENANTS.**  In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A.  So long as the Owners Association (or equivalent entity holding title to common areas and facilities), acting as trustee for the homeowners, maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property located in the PUD, including all improvements now existing or hereafter erected on the mortgaged premises, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 4 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the

FHA Multistate PUD Rider – 10/95
589U (0402).01                          Page 1 of 3                          Initials: _____
usfpud

Owners Association policy.   Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard.  In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B.    Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

C.    If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument.  Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

FHA Multistate PUD Rider — 10/95
S89U (0402).01                              Page 2 of 3                         Initials: WAG PDS

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_Peter D. Schleh_ (Seal)
Peter D Schleh                    -Borrower

_Laurie Johnson_ (Seal)
Laurie Armelagos Schleh           -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

FHA Multistate PUD Rider — 10/95
589U (0402).01                     Page 3 of 3

**Exhibit "A"**

File Number: ████████

All that certain land situate in Lee County, State of Florida, viz:

Lot 12, of Cypress Pointe Phase II, according to the plat thereof, recorded in Plat Book 51, at Page 61, of the Public Records of Lee County, Florida.

Being the same property conveyed to Peter D. Schleh and Laurie Armelagos Schleh, husband and wife, by Quit Claim Deed dated January 5, 2005, of record in Official Record Book 4556, Page 2855, in the Public Records of Lee County, Florida. Also, being the same property PREVIOUSLY conveyed to Peter D. Schleh, by Warranty Deed dated June 15, 1998, of record in Official Record Book 2977, Page 3814, in the Office aforesaid.

Being the same property commonly known as: 12281 Eagle Pointe Circle, Fort Myers, Florida 33913
Tax ID No.: 07-45-26-12-00000.0120

INSTR # 2010000253556, Pages 1
Doc Type ASG, Recorded 10/11/2010 at 07:56 AM
Charlie Green, Lee County Clerk of Circuit Court
Rec. Fee $10.00
Deputy Clerk V/SEIBERT
#1

Prepared by: DAVID J. STERN, ESQ.
Record & Return to: 900 South Pine Island Road Suite 400
Plantation, FL 33324-3920
10-06200 CWF

MIN:
MERS PHONE NUMBER

## ASSIGNMENT OF MORTGAGE
### KNOW ALL MEN BY THESE PRESENTS:

*THAT* MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as nominee for SUREPOINT LENDING ABN FIRST RESIDENTIAL MORTGAGE NETWORK, INC.

Residing or located at c/o COUNTRYWIDE HOME LOANS, 7105 CORPORATE DRIVE, MAIL STOP PTX-B-35, PLANO, TX 75024, herein designated as the assignor, for and in consideration of the sum of $1.00 Dollar and other good and valuable consideration, the receipt of which is hereby acknowledged, does hereby grant, bargain, sell, assign, transfer and set over unto BAC HOME LOANS SERVICING, L.P. F/K/A COUNTRYWIDE HOME LOANS SERVICING, L.P. residing or located at: C/O COUNTRYWIDE HOME LOANS, 7105 CORPORATE DRIVE, MAIL STOP PTX-B-35, PLANO, TX 75024 herein designated as the assignee, the mortgage executed by PETER D. SCHLEH AND LAURIE ARMELAGOS SCHLEH, HUSBAND AND WIFE recorded in LEE County, Florida at INSTRUMENT NO. 2007000370625 and encumbering the property more particularly described as follows:

LOT 12, OF CYPRESS POINTE PHASE II, ACCORDING TO THE PLAT THEREOF, RECORDED IN PLAT BOOK 51, AT PAGE 61, OF THE PUBLIC RECORDS OF LEE COUNTY, FLORIDA.

together with the note and each and every other obligation described in said mortgage and the money due and to become due thereon

TO HAVE AND TO HOLD the same unto the said assignee forever, but without recourse on the undersigned.

*In Witness Whereof,* the said Assignor has hereunto set his hand and seal or caused these presents to be signed by its proper corporate officers and its corporate seal to be hereto affixed , this 12 day of March , 2010, but effective as of the 1st day of February, 2010.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as nominee for SUREPOINT LENDING ABN FIRST RESIDENTIAL MORTGAGE NETWORK, INC.,
(CORPORATE SEAL)

ATTEST:
WITNESS:

BY:
PRINT NAME: David Perez
TITLE: Vice President

Print Name: Tammi Henley

WITNESS:

Print Name: Erik Aguilar
Texas

STATE OF
COUNTY OF Dallas

PERSONALLY APPEARED BEFORE ME, the undersigned authority in and for the aforesaid county and state, on this the 12 day of March , 2010, within my jurisdiction, the within named David Perez who is personally known to me and who acknowledged to me that (s)he is Vice President and that for and on behalf of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as nominee for SUREPOINT LENDING ABN FIRST RESIDENTIAL MORTGAGE NETWORK, INC., and as its act and deed (s)he executed the above and foregoing instrument, after first having been duly authorized by MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as nominee for SUREPOINT LENDING ABN FIRST RESIDENTIAL MORTGAGE NETWORK, INC., to do so.

WITNESS my hand and official seal in the County and State last aforesaid this 12 day of March , 2010.

NOTARY PUBLIC


BRADY JEAN McDERMOTT
Notary Public
STATE OF TEXAS
My Comm. Exp. 10-08-12

Exhibit 4

Exhibit 5

# BANKRUPTCY PLAN LEDGER

Borrower Name : PETER D & LAURIE ARMELAGOS SCHLEH

Account Number :

Address : 12281 EAGLE POINTE CIRCLE

Data As of : 04/20/15 09:20 AM

Case# : 14-20710

Bankruptcy Filed Date: 8/4/2014

| | | | | Transaction | | | | | | Payment | | | | | | Pre Petition Balance | Post Petition Balance | Stip Balance | Total/Balance | Unallocated Funds | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Source | Check Number | FundInd/Transcode | Description | Pre Pet. Date Satisfied | Post Pet. Date Satisfied | Stip Date Satisfied | Trans Date | Funds Received | Amount Due | Principal/Interest | Opt Ins | Buydown | LateChr | Escrow | Fees | | | | | Pre Petition Balance | Post Petition Balance | Stip Balance |
| | 0 | POST | DISB FHA MIP PMT 555 | | | | 8/6/2014 | -89.89 | | | | | | -89.89 2593.47 | | | | | | | | |
| | 0 | POST | DISB FHA MIP PMT 555 | | | | 9/5/2014 | -89.89 | | | | | | -89.89 2503.58 | | | | | | | | |
| | 0 | POST | DISB FHA MIP PMT 555 | | | | 10/6/2014 | -89.89 | | | | | | -89.89 2413.69 | | | | | | | | |
| | 0 | POST | DISB FHA MIP PMT 555 | | | | 11/6/2014 | -89.89 | | | | | | -89.89 2323.80 | | | | | | | | |
| | 0 | POST | DISB COUNTY TAX PMT 590 | | | | 11/6/2014 | 2525.80 | | | | | | 2525.80 -202.00 | | | | | | | | |
| | 0 | POST | DISB FHA MIP PMT 555 | | | | 12/4/2014 | -89.89 | | | | | | -89.89 -291.89 | | | | | | | | |
| | 0 | POST | DISB FHA MIP PMT 555 | | | | 1/7/2015 | -89.89 | | | | | | -89.89 -381.78 | | | | | | | | |
| | 0 | POST | DISB FHA MIP PMT 555 | | | | 2/5/2015 | -88.25 | | | | | | -88.25 -470.03 | | | | | | | | |
| | 0 | POST | DISB FHA MIP PMT 555 | | | | 3/5/2015 | -88.25 | | | | | | -88.25 -558.28 | | | | | | | | |
| | 0 | POST | DISB FHA MIP PMT 555 | | | | 4/6/2015 | -88.25 | | | | | | -88.25 -646.53 | | | | | | | | |

This ledger is for bankruptcy purposes only.   The Bank maintains this ledger for the period during which the debtor is making payments.
Page: (1 of 2 )

under the terms of a chapter 13 bankruptcy plan. The Bank separately maintains an accounting system that tracks payments according to the terms of the loan documents. That contractually-based system may be used for servicing the mortgage in the event this debtor's bankruptcy case is dismissed, converted to chapter 7, or the automatic stay is lifted prior to the debtor's completing the payments required under the plan.

Page: (2 of 2 )